## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE PHOENIX INSURANCE COMPANY, a      :
subsidiary of THE TRAVELERS INDEMNITY      :    CIVIL ACTION
COMPANY a/s/o SURETY MECHANICAL      :
SERVICE, INC.      :
     :
    Plaintiff,      :
     :
    v.      :
     :
WEST JERSEY AIR CONDITIONING AND      :    NO. 09-5570
HEATING COMPANY      :
     :
    Defendant.      :

**FILED**

OCT 26 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**FILED**

OCT 26 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM

BUCKWALTER, S.J.                                                    October 26, 2010

Presently before the Court are Defendant West Jersey Air Conditioning and Heating Company's Motion for Summary Judgment and Motion to Preclude Testimony of Plaintiff's Expert. For the following reasons, the Motion for Summary Judgment is granted and the Motion to Preclude Testimony of Plaintiff's Expert is dismissed as moot.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an insurance subrogation action in which Plaintiff The Phoenix Insurance Company ("Plaintiff") seeks contribution and indemnity from Defendant West Jersey Air Conditioning and Heating Company ("Defendant"). (Compl. ¶¶ 12-24.) The case stems from an incident on November 15, 2006, in which a man named Joseph Corosanite was injured on the roof of a building located at 2600 South Broad Street in Philadelphia, Pennsylvania. (Id. ¶ 3; Def.'s Mot. Summ. J. ¶ 2.) Mr. Corosanite claimed that he was on the roof to increase the flow

of fresh air into the building, and that he sustained serious injuries when part of an HVAC unit known as the "economizer hood" fell and knocked him off of his ladder. (Def.'s Mot. Summ. J., Ex. K, Amended Complaint of Joseph and Angela Corosanite ("Corosanite Am. Compl."), ¶¶ 9-10.)

The HVAC unit at the crux of this litigation was installed in 1998. (Def.'s Mot. Summ. J ¶ 9.) P. Agnes, Inc. was the contractor that oversaw the project and Surety Mechanical Service, Inc. was the subcontractor that performed the actual installation. (Id. ¶¶ 9-10.) In April of 1998, Defendant entered into an agreement to maintain the roof-top air conditioning units at 2600 South Broad Street, including the HVAC unit installed by P. Agnes and Surety. (Id. ¶¶ 18-19; Id., Ex. D, Service Contract between West Jersey Air Conditioning and Heating and South Philadelphia Community Center ("Service Contract").) Defendant performed maintenance work on these units until 2004, when the property was sold to DeMedici Corp., which did not renew Defendant's contract. (Def.'s Mot. Summ. J. ¶¶ 22-23.) The roof-top air conditioners were thereafter serviced from September 2005 until February 2007 by Campano Heating and Air Conditioning Company. (Id., Ex. L, Engineering Investigative Report Prepared for Joseph Corosanite's Counsel, 3.)

Mr. Corosanite filed suit against P. Agnes, Surety, Campano, and Defendant, alleging that their negligence in either installing or maintaining the HVAC unit caused his injuries. (Corosanite Am. Compl. ¶¶ 12-25.) Mr. Corosanite's case settled after jury selection, and all parties except Defendant contributed to the settlement. (Def.'s Mot. Summ. J. ¶¶ 31-32.) Plaintiff, Surety's insurance company, filed its Complaint on November 23, 2009, seeking contribution and indemnity from Defendant. (Compl. ¶¶ 12-24.) Defendant filed the present

2

Motion for Summary Judgment and Motion to Preclude Testimony of Plaintiff's Expert on July 20, 2010. Plaintiff responded to the Motion for Summary Judgment on August 13, 2010, but did not respond to the Motion to Preclude Testimony of Plaintiff's Expert.

## II.    Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, PA, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials

3

negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Summary judgment may be granted when "the evidence is merely colorable . . . or is not significantly probative." Id. at 249-50 (citations omitted).

## III.    Discussion

### A.    Motion for Summary Judgment

In Pennsylvania, a plaintiff who brings a negligence claim must establish that the defendant owed the plaintiff a duty, that the duty was breached, that the breach caused the plaintiff's injury, and that the plaintiff suffered damages. Harris v. Merchant, No. CIV.A.09-1662, 2010 WL 3734107, at *7 (E.D. Pa. Sept. 23, 2010) (citing Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009)).

In this case, Plaintiff alleges that Defendant had a duty to inspect and maintain, in a workmanlike manner, the HVAC unit that injured Joseph Corosanite, and to ensure that the HVAC unit and its surrounding support system were in compliance with all applicable codes and laws. (Compl. ¶¶ 13-14.) The only evidence submitted to the Court in support of Plaintiff's claim that Defendant breached these duties is the expert report of Kenneth P. Creech, a consulting engineer. (Def.'s Mot. Summ. J., Ex. H, Expert Report of Kenneth P. Creech

4

("Expert Report").)[1] Mr. Creech states that Defendant failed:

- To provide any preplanning or professional engineering support that would have recognized the mandatory legal requirements for service platforms and guard rails prior to taking the job.
- To enforce any safety program at the site.
- To perform a survey of the roof and the equipment that they were contracted to service to determine, in advance, any potential hazards or safety requirements that needed to be addressed . . . .
- To take the necessary care to recognize that the old rooftop equipment was a much larger "Mammoth" Brand unit that was installed covering the entire length of the I-Beam framing raised 56 inches on the roof to the bottom of the unit making it impossible to use the rails as a walking platform. When the new smaller unit was installed less than half the size of the original HVAC equipment, rail space became available to use as a service walkway, however no guards were considered for the new hazard.
- To recognize that the old unit had side access and was routinely serviceable without climbing up on the rails. The new Carrier rooftop required access to the top of the machine for access for service creating the need for additional safety action.
- To inform the management of the building of the existing hazards that must be corrected on the roof so the building management could have taken action to remediate the conditions on the roof.
- To prohibit workers to utilize closed step ladders hazardously in violation to the required methods delineated in the OSHA 29 CFR 1926 regulations . . . .

(Expert Report 6-7.) The Court now considers each of these seven grounds to determine whether

there is a genuine issue of material fact in this case.

> **1.  Whether Defendant Failed to Provide Preplanning or Professional Engineering Support; Failed to Enforce a Safety Program; or Failed to Perform a Survey of the Roof and the Equipment Thereon to Determine if Any Hazards Existed (Mr. Creech's First, Second, and Third Grounds for Defendant's Liability)**

---

[1] The only documents submitted by Plaintiff in this case are the Complaint and the Response to Defendant's Motion for Summary Judgment. Other than its discussion of the expert report addressed in this Memorandum, Plaintiff's Response consists largely of irrelevant factual distinctions between the present case and cases Defendant cited for principles of law (not factual similarity) in its Motion for Summary Judgment. No affidavits, transcripts of depositions, or other exhibits were submitted in conjunction with Plaintiff's Response to Defendant's Motion for Summary Judgment. The Court's copy of Mr. Creech's expert report was submitted as an exhibit by Defendant. (See Def.'s Mot. Summ. J., Ex. H.)

Mr. Creech's expert report states that Defendant failed in its duty "to provide any preplanning or professional engineering support that would have recognized the mandatory legal requirements for service platforms and guard rails;" to enforce a safety program; and to perform a survey of the roof and the equipment thereon to determine if any potential hazards or safety requirements needed to be addressed. (Expert Report 6-7.) According to Mr. Creech, Joseph Corosanite would not have fallen off of his ladder and sustained injuries if Defendant had taken these precautionary measures. (Id. at 8.) Mr. Creech states that these duties existed by virtue of Defendant's membership in Philadelphia Local Union 420 of HVAC Piping and Steam Fitters.[2] (Id. at 3-5; Id., Ex. I, Deposition of Kenneth P. Creech ("Creech Dep."), 186:1-190:11, July 6, 2010.)

Because it is the only basis upon which Mr. Creech asserts that Defendant had assumed these duties,[3] the issue of whether or not Defendant was a member of Philadelphia Local Union 420 is crucial to this Motion for Summary Judgment. Defendant argues that it was never a

---

[2] In addition to these duties, Mr. Creech also states that Local 420 mandates compliance with section 407.2 of the Philadelphia Mechanical Code 1993 Edition and American National Standards Institute ("ANSI") Standard A1264.1-1995. (Expert Report 3-5.) In this case, Mr. Creech asserts that section 407.2 and ANSI A1264.1-1995 required the installation of a walking platform and guardrail on the HVAC unit, and that these safety precautions would have prevented Joseph Corosanite from falling off the ladder and injuring himself. (Id. at 4, 8.)

[3] The Conclusion to Mr. Creech's report states that all seven of his grounds for liability are based on Defendant's "own Local Philadelphia union requirements, Philadelphia Mechanical Code requirements, State of Pennsylvania requirements, National ASTM Standards, International Building Code requirements and Federal Standards, through the Department of Labor administered by OSHA Safety Administration." (Expert Report 6.) This is merely a vague recitation of authorities that fails to state with particularity the source of Defendant's liability. The Court therefore looks to the body of the expert report and the deposition of Mr. Creech to determine precisely what sources Mr. Creech identifies as giving rise to Defendant's duties. Here, the Court finds that the only discernible basis for liability is Defendant's alleged membership in Philadelphia Local Union 420.

member of Local 420, and has introduced an affidavit from its president, Jacqueline A. Conroy, in support of this argument. (Def.'s Mot. Summ. J. 6; Id., Ex. E, Affidavit of Jacqueline A. Conroy ("Conroy Affidavit").) Pursuant to Federal Rule of Civil Procedure 56(c)(1), an affidavit submitted in support of summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). Here, Ms. Conroy's affidavit states that Defendant and its employees were non-union during the time they serviced the HVAC units at 2600 South Broad Street. (Conroy Affidavit ¶¶ 1-7.) This is based on her personal knowledge as president of the company, and there is nothing in the record to indicate that she would not be competent to testify on this matter. (Id.) The Court therefore finds that Ms. Conroy's affidavit is admissible evidence.

Plaintiff's only evidence that Defendant was in fact a member of Local 420 comes from Mr. Creech, who claims that he learned of Defendant's membership by calling the union office and examining a roster of union members on the Local 420 website. (Creech Dep. 110:17-112:10.) Mr. Creech's proof of Defendant's union membership is therefore based not on personal knowledge, but on information and statements obtained from third parties. Plaintiff has not submitted an affidavit from the union representative with whom Mr. Creech spoke, a copy of the Local 420 roster referenced by Mr. Creech, or any other evidence to support this claim. As such, Plaintiff's argument that Defendant is a member of Philadelphia Local Union 420 is premised on inadmissible hearsay[4] and cannot be considered by the Court in deciding this Motion

---

[4] Pursuant to Federal Rule of Evidence 801(c), "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Hearsay is not admissible unless it falls into

for Summary Judgment. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion.") (citations omitted).

In sum, the duties described by Mr. Creech are premised on Defendant's alleged membership in Philadelphia Local Union 420, and Defendant has introduced admissible evidence that it was not a member of this union. The only evidence submitted by Plaintiff to challenge Defendant's denial of union membership is inadmissible hearsay. The Court therefore finds that Plaintiff has failed to establish that Defendant had a duty to provide preplanning or professional engineering support that would have recognized the mandatory legal requirements for service platforms and guard rails, to enforce a safety program, or to perform a survey of the roof and the equipment thereon to determine if any potential hazards or safety requirements needed to be addressed.

      **2.**      **Whether Defendant Failed to Recognize that the Installation of an HVAC Unit Which was Smaller than the Previous Unit Created Rail Space that Could Have Been Used as a Service Walkway that Required Guards, and Whether Defendant Failed to Recognize that Service Access for the HVAC Unit Required Additional Safety Action (Mr. Creech's Fourth and Fifth Grounds for Defendant's Liability)**

Mr. Creech's expert report notes that before the HVAC unit which injured Joseph Corosanite was installed, a much larger air conditioner – a "Mammoth" brand unit – was located on the roof of 2600 South Broad Street. (Expert Report 7.) When the current, smaller "Carrier"

---

one of the exceptions enumerated in the rules. FED. R. EVID. 802. Here, the statements Mr. Creech obtained about Defendant's union membership were not made at a trial or hearing, and were offered to prove the truth of the matter asserted, namely, that Defendant was a member of Local 420. Therefore, the evidence that Defendant is a member of Local 420 is hearsay, and is not subject to any exception.

unit replaced the Mammoth unit, rail space became available on the HVAC's support frame which could be used as a service walkway. (Id.) Mr. Creech argues that the exposed rail should have been supported by guards, and that Defendant had a duty to recognize this need. (Id. at 6-8.) When asked during his deposition why it was Defendant's duty to remedy this alleged problem, Mr. Creech claimed it was because Defendant had "more experience on this site than anyone else" and because "they were there." (Creech Dep. 192:3-4, 7.)

The expert report also states that Defendant failed to recognize that service access for the Mammoth unit was located on the side of the machine, and did not require the use of any rails, while the new Carrier unit could only be accessed from above and thus required "additional safety action." (Expert Report 7.) Mr. Creech stated that Defendant's duty to recognize this problem was "based on the fact that the new unit is different from the old unit, functions differently." (Creech Dep. 193:9-11.)

In Malloy v. Doty Conveyor, 820 F. Supp. 217 (E.D. Pa. 1993), the court held that "knowledge of a potential danger created by others does not give rise to a duty to abate the danger or to liability for injuries caused by such danger." Id. at 222. See also Blewitt v. Man Roland, Inc., 168 F. Supp. 2d 466, 470 (E.D. Pa. 2001) ("mere knowledge of a dangerous situation, even by one who has the ability to intervene, [is not] sufficient to create a duty to act.") (citations omitted). Here, with respect to both grounds for liability, Mr. Creech's sole basis for assigning fault to Defendant is its failure to recognize the alleged problems created when the Carrier unit replaced the Mammoth unit. Defendant, however, was not involved in either removing the old unit or installing the new one. Mr. Creech's report merely demonstrates that Defendant was in a position to observe alleged structural deficiencies that arose when the new

9

HVAC unit was installed; it does not establish that Defendant had an affirmative duty to actually remedy these deficiencies.

Indeed, Defendant argues that it was only hired to provide basic maintenance on the HVAC units, not to perform safety inspections or install equipment such as guards and walking platforms. (Def.'s Mem. Supp. Mot. Summ. J. 9.) In support of this argument, Defendant has introduced its service contract for 2600 South Broad Street, which stated that Defendant would not be responsible for "[c]hanges, repairs or corrections to equipment due to design, government code or insurance requirements." (Service Contract 4.) Defendant's evidence shows that it expressly declined to assume the duties described by Mr. Creech, which arise from section 407.2 of the Philadelphia Mechanical Code and ANSI Standard A1264.1-1995. (Expert Report 3-5.)[5] Plaintiff has not introduced any evidence that contradicts this understanding of Defendant's responsibilities. As such, the Court finds that Defendant did not have a duty to recognize the need for guards or to take additional safety measures concerning the HVAC unit.

### 3. Whether Defendant Failed to Inform the Building's Management of Existing Hazards so that Management Could Have Remedied the Hazardous Conditions on the Roof (Mr. Creech's Sixth Basis for Liability)

Mr. Creech's sixth basis for assigning fault to Defendant is his assertion that Defendant failed in its duty to inform the management of 2600 South Broad Street that the hazards on the roof-top HVAC unit needed to be corrected. (Id. at 7.) Mr. Creech stated that this duty arose

---

[5] Furthermore, Mr. Creech claimed that section 407.2 of the Philadelphia Mechanical Code and ANSI Standard A1264.1-1995 applied to Defendant by virtue of its membership in Philadelphia Local Union 420. See supra note 2. As discussed in section III.A.1, Plaintiff has not established that Defendant is a member of Local 420, and this provides additional support for the Court's conclusion that Defendant did not have a duty to provide guards or other safety equipment around the HVAC unit.

10

from the fact that Defendant was hired "to take care of the systems. And when they go up to the roof, they saw the fact that there was a safety issue, they should have told the management so they could either hire somebody to put it in or take action to protect its own people." (Creech Dep. 194:10-15.)

The Court finds three problems with Mr. Creech's reasoning in his description of Defendant's alleged failure. First, to the extent an expert's opinions are predicated upon factual assumptions, those assumptions "must find some support in the record." Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir. 1990) (quotation omitted). Where the factual assumptions are unfounded, a court, on summary judgment review, is free to disregard the expert's opinions. Id. Here, Mr. Creech conceded, during his deposition, that he actually does not know whether Defendant informed management of the roof-top hazards. (Creech Dep. 247:8-16.)[6] Therefore, by his own admission, his assumption that Defendant failed in this duty is premised on an incomplete understanding of the facts.

Second, there is no evidence that Defendant was aware that these alleged roof-top hazards existed. The safety requirements described by Mr. Creech – the installation of a guard rail or walking platform surrounding the HVAC unit – arise from his interpretation of section 407.2 of the Philadelphia Mechanical Code and ANSI Standard A1264.1-1995. As discussed in section

---

[6] According to Mr. Creech,

if you see . . . someplace that's soft in terms of safety, it should be addressed and it should be notified to the owner, which is an obligation that they have, not – well, see, I don't know whether they did that or not. They should have informed them. But again, because I don't have firsthand knowledge of what the owners did, I'm unable to determine that.

Id.

11

III.A.1 and note 5 of this memorandum, Mr. Creech has not established that either of these apply to Defendant. If Defendant did not have an obligation to abide by the Philadelphia Mechanical Code or ANSI, there is no reason to assume it would have been aware of these safety requirements and been in a position to inform management about them.

Third, even if Defendant was aware of these safety issues, there is nothing in the record to suggest that it had a duty to warn the building's management about them. As explained above, mere knowledge of a dangerous condition created by others does not give rise to a duty to act. Malloy, 820 F. Supp. at 222. If the hazardous conditions pertained to the actual operation of the HVAC unit, then Plaintiff could more convincingly make the argument that Defendant – as the company hired to service the machine – had a duty to make the necessary repairs or inform management of the problems. In this case, however, the alleged hazards stemmed from the lack of code-required, structural support equipment that should have surrounded the HVAC unit, not from any deficiencies in the HVAC unit itself. As discussed in section III.A.2, Defendant's service contract limited its responsibilities to basic maintenance of the HVAC units, and explicitly stated that Defendant would not make repairs, alterations, or changes related to design or government code requirements. (Service Contract 4.) Plaintiff has not introduced any evidence that challenges this understanding of Defendant's obligations, nor has it articulated any other basis for Defendant's liability. The Court therefore rejects the argument that Defendant had a duty to inform the building's management of the hazards described by Mr. Creech.

## 4. Whether Defendant Failed to Prohibit Workers from Utilizing Closed Step Ladders in Violation of Methods Delineated in OSHA 29 C.F.R. § 1926 (Mr. Creech's Seventh Ground for Liability)

Mr. Creech's final basis for assigning fault to Defendant is that it failed to prohibit

workers from utilizing closed step ladders in violation of 29 C.F.R. § 1926.[7] (Expert Report 7.)
When asked to clarify this statement, Mr. Creech said that he was not faulting Defendant for
failing to prevent Joseph Corosanite, the injured party, from using a closed ladder to access the
HVAC unit at the time he fell, but for failing to prevent its own employees from using ladders in
this manner. (Creech Dep. 198:5-13.) In other words, Mr. Creech faults Defendant because
"[t]hey're not taking care of their own people." (Id. at 198:12-13.) Mr. Corosanite was not
employed by Defendant, and because Defendant's duty to its own employees is not an issue in
this case, the Court does not address the merits of this argument.

## B.     Defendant's Motion to Preclude Testimony of Plaintiff's Expert

On July 20, 2010, the same day that its Motion for Summary Judgment was filed,
Defendant also filed a Motion to Preclude Testimony of Plaintiff's Expert. Plaintiff never
responded to this Motion. The Court notes that pursuant to Local Rule of Civil Procedure 7.1(c),
Defendant's Motion "may be granted as uncontested" as a result of Plaintiff's failure to respond.
E.D. PA. CIV. R. 7.1(c). In light of the Court's decision to grant Defendant's Motion for
Summary Judgment, however, the Motion to Preclude Testimony of Plaintiff's Expert is merely
dismissed as moot.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has not presented sufficient
evidence for a reasonable jury to return a verdict in its favor. The only evidence introduced to
establish Defendant's alleged negligence is the expert report of Kenneth Creech, which relies on
inadmissible hearsay and fails to demonstrate that Defendant violated any duty to Joseph

---

[7] 29 C.F.R. § 1926 sets forth safety and health regulations for construction.

13

Corosanite, the person whose injury was the catalyst for this subrogation action. Because the Court finds that there is no genuine issue of material fact, Defendant's Motion for Summary Judgment is granted and Defendant's Motion to Preclude Plaintiff's Expert Testimony is dismissed as moot.